IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER ANN HIRSHON,                    6:16-cv-02265-BR

        Plaintiff,                      OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**BRENT WELLS**
**KATHERINE EITENMILLER**
Harder Wells Baron & Manning, PC
474 Willamette St., Suite 200
Eugene, OR 97401
(541) 686-1969

        Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1000

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2112

   Attorneys for Defendant


**BROWN, Senior Judge.**

   Plaintiff Heather Ann Hirshon seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

   For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and award of benefits.


<u>**ADMINISTRATIVE HISTORY**</u>

   Plaintiff protectively filed her application for SSI benefits[1] on April 24, 2013. Tr. 18.[2] Plaintiff alleges a

---

  [1] Plaintiff initially filed for both SSI and Disability Insurance Benefits (DIB), but withdrew her DIB application on May 1, 2015. Tr. 244.

  [2] Citations to the official transcript of record filed by the Commissioner on May 23, 2017, are referred to as "Tr."

2 - OPINION AND ORDER

disability onset date of April 24, 2013.[3]  Tr. 19.  Plaintiff's

application was denied initially and on reconsideration.  An

Administrative Law Judge (ALJ) held a hearing on July 8, 2015.

Tr. 18, 33-57.  Plaintiff and a vocational expert (VE) testified.

Plaintiff was represented by an attorney at the hearing.

On July 31, 2015, the ALJ issued an opinion in which he

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 18-27.  On August 12, 2015, Plaintiff requested

review by the Appeals Council.  Tr. 13.  On September 28, 2016,

the Appeals Council denied Plaintiff's request to review the

ALJ's decision, and the ALJ's decision became the final decision

of the Commissioner.  Tr. 1-4.  *See Sims v. Apfel*, 530 U.S. 103,

106-07 (2000).

On December 2, 2016, Plaintiff filed a Complaint in this

Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on January 27, 1982.  Tr. 26.  Plaintiff

was thirty-three years old at the time of the hearing.  Plaintiff

has limited education.  Tr. 26.  The ALJ found Plaintiff does not

have any past relevant work experience.  Tr. 26.

Plaintiff alleges disability due to mastocytosis mast cell

---

[3] On May 1, 2015, Plaintiff amended her disability onset
date to April 24, 2013.

disorder, swelling of throat, weakness, food intolerance, depression, bone and joint pain, stomach pain, rashes all over her body, low immune system, numbness in face and body, and memory problems.  Tr. 76.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 21-26.

## **STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as

adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)).  It is more than a mere scintilla [of evidence]

but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d

at 690).

The ALJ is responsible for evaluating a claimant's

testimony, resolving conflicts in the medical evidence, and

resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

Cir. 2009).  The court must weigh all of the evidence whether it

supports or detracts from the Commissioner's decision.  *Ryan v.

Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even

when the evidence is susceptible to more than one rational

interpretation, the court must uphold the Commissioner's findings

if they are supported by inferences reasonably drawn from the

record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).

The court may not substitute its judgment for that of the

Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.

2006).

## DISABILITY ANALYSIS

### I.  The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA).  20 C.F.R. § 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since April 24, 2013, Plaintiff's application date.  Tr. 20.

At Step Two the ALJ found Plaintiff has the severe impairments of obesity and mast cell disorder (mastocytosis-mastocytoma).  Tr. 21.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 22.  The ALJ found Plaintiff has the RFC to perform the full range of medium work.  Tr. 23.

At Step Four the ALJ concluded transferability of job skills is not an issue because Plaintiff does not have past relevant work experience.  Tr. 26.

Based on Plaintiff's age, education, work experience, and RFC, the ALJ found at Step Five that Plaintiff can perform other work in the national economy.  Tr. 26-27.  Thus, the ALJ concluded Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 27.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) failed to provide clear and convincing reasons for discrediting Plaintiff's

testimony; (2) improperly discounted the medical opinion of one of Plaintiff's treating physicians; (3) failed to consider the side-effects of Plaintiff's medication when assessing her RFC; and (4) improperly rejected the lay-witness testimony of Sharon Cook, Plaintiff's mother.

The Commissioner, however, contends (1) the ALJ reasonably assessed Plaintiff's subjective symptom testimony, (2) Plaintiff failed to provide any objective evidence of limitations based on the side-effects of her medication, (3) the ALJ reasonably rejected the treating physician's opinion, and (4) the ALJ reasonably assessed the lay-witness's statements.

## I. The ALJ erred when he found Plaintiff's testimony was not fully credible.

Plaintiff contends the ALJ erred when he failed to provide clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony. Plaintiff argues her testimony should be fully credited as true.

The Commissioner, in turn, contends the ALJ's analysis of Plaintiff's symptom testimony is supported by substantial evidence in the record, and the Court should uphold the ALJ's opinion as to Plaintiff's testimony.

### A. Standards

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence

of an impairment and must show the impairment or combination of
impairments could reasonably be expected to produce some degree
of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is
not any affirmative evidence of malingering, the ALJ can reject
the claimant's testimony only if he provides clear and convincing
reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th
Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.
1995)). General assertions that the claimant's testimony is not
credible are insufficient. *Id*. The ALJ must identify "what
testimony is not credible and what evidence undermines the
claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

If the ALJ's credibility finding is specific, clear,
and convincing, and supported by substantial evidence in the
record, the court may not engage in second-guessing. *See Thomas
v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

B.   **Analysis**

The ALJ concluded: "[W]hile [Plaintiff's] allegations
regarding her symptoms is [*sic*] generally credible, it is evident
that her symptoms are not nearly as debilitating as she has
alleged." Tr. 25. The ALJ noted Plaintiff's medications
improved her symptoms, her activities of daily living do not

support a finding of disability, and her work history and poor earnings record raise questions about her limitations.

### 1. Symptoms and Medication Side-Effects

At the hearing Plaintiff stated when she was diagnosed with mast cell activation syndrome in April 2013, she "could not do anything except sleep on a couch" as a result of the medications she took. Tr. 40. She described her symptoms as "headaches," her "body feels like it's on fire," "flushing," "joints start aching," "tiredness," "throat swells," "can't function," and "major pain." Tr. 40-41. She also testified she experiences dizziness and forgetfulness. Tr. 50. Plaintiff testified these symptoms ("attacks") can last "a day to weeks." Tr. 47. When she experiences these symptoms, she takes medications. Tr. 50. Plaintiff stated, however, she "never feel[s] normal" and has never been completely symptom-free. Tr. 48. Plaintiff also testified the medications make her "loopy" and "very tired," and she usually lies down or sits down, but she "can't do anything" after taking the medications. Tr. 50-51.

The ALJ noted Plaintiff's physicians prescribed several medications to treat her mast cell disorder symptoms, and those medications appeared to be effective. Tr. 24. A month after Plaintiff was prescribed Gastrocrom she reported her abdominal pain was "much better," she went from having diarrhea daily to

only having an episode every two weeks, and her flushing episodes were reduced to just once a week. Tr. 24, 548. On October 7, 2013, Sarah Kehl, M.D., one of Plaintiff's treating physicians, noted Plaintiff had "huge improvement" clinically. Tr. 552. On August 7, 2014, Adam Williams, M.D., another one of Plaintiffs' treating physicians, noted Ketotifen, a new medication, made a "huge difference" in Plaintiff's symptoms and she had fewer episodes that required the use of Prednisone and Benadryl. Tr. 24, 635. The ALJ also noted Plaintiff admitted at the hearing on July 8, 2015, that her current medications "helped with some symptoms" and kept her from having "major pain." Tr. 41.

The ALJ relied on only part of Dr. Williams's treatment record of August 7, 2014. The record in full context states:

> [Plaintiff] has been treated with a number of medications which have been unsuccessful at controlling her symptoms.
>
> As of her last visit, she was started on ketotifen . . . that has made a huge difference. . . . She also takes Gastrocrom . . . and has had good success but not complete relief of GI or cutaneous symptoms.
>
> She returns today stating the ketotifen has helped her. She has had fewer episodes requiring prednisone and Benadryl. She does continue to have frequent attacks of flushing, intense itching, and hives. She also continues to have episodes of diarrhea, abdominal cramping, and even throat swelling.
>
> Overall, she is better but she continues to struggle with frequent episodes. This had has a major negative impact on her quality of life.

Tr. 635.  Thus, although Plaintiff received some relief of her
symptoms from the use of medications, the record reflects the
medications have been "unsuccessful at controlling her symptoms."
The record indicates Plaintiff continues to have "frequent"
attacks of flushing, intense itching, hives, episodes of
diarrhea, abdominal cramping, and throat swelling.  Tr. 635.
Although Dr. Williams stated Plaintiff is better "overall," he
also indicated she "struggles with frequent episodes" that have
had a negative impact on her quality of life.  Tr. 635.

On this record the Court concludes the ALJ's
credibility finding based on Plaintiff's symptoms and medication
side-effects is not supported by substantial evidence in the
record.

### 2.   Activities of Daily Living

The ALJ found Plaintiff's activities of daily living
"belie her assertions that she is incapacitated by her impairment
most of the time."  Tr. 24.

At the hearing Plaintiff testified she often cannot
tell what triggers her "attacks," and they can happen at any
time.  Tr. 52.  She described her life as "basically . . . I live
in a bubble."  Tr. 52.  Plaintiff also testified her mother moved
from Veneta to La Pine, Oregon, to help Plaintiff care for her
children, and she spends one to three hours per day at
Plaintiff's home helping with chores and caring for the children.

Tr. 53.  Plaintiff also testified she drives "maybe twice a week," but she often accompanies others who drive.  Tr. 43. Plaintiff testified  her children take the bus to school in the morning and she picks them up after school except on days when she can't drive and then either her mother or husband pick them up.  Tr. 43-44.  Plaintiff testified she has "good days and bad days."  On good days she tries to do things, and on bad days she is "usually on the couch just doing nothing."  Tr. 45-46, 48.

The ALJ, however, relied on the fact that Plaintiff is able to prepare simple meals, to do laundry and light household chores, and to manage her finances independently.  Tr. 24.  The ALJ noted Plaintiff cares for her four children, "which can be quite demanding both physically and emotionally."  Tr. 24.  The ALJ also found Plaintiff spends time with others, drives to pick up her children from school, attends teacher-parent conferences, occasionally goes on field trips, and takes her dog to the dog park.  Tr. 24.  The ALJ concluded these activities "are inconsistent with a finding of disability."  Tr. 24.  The Ninth Circuit, however, has found "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [the] credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

On this record the Court concludes the ALJ's credibility finding based on Plaintiff's activities of daily

living is not supported by substantial evidence in the record.

### 3. Work History

The ALJ noted Plaintiff worked only sporadically before the alleged disability onset date of April 24, 2013, and "has never earned at substantial gainful activity levels since beginning work in 1999." Tr. 24-25, 168. The ALJ noted Plaintiff quit working in 2005 because she was pregnant, and she stated she did not look for work after she gave birth because her husband had a good job and she did not need to work. Tr. 25. Based on this evidence the ALJ found Plaintiff's work history and poor earnings records "raises credibility concerns" regarding Plaintiff's symptom testimony. Tr. 24-25.

Plaintiff testified at the hearing that she last worked as a care-giver in 2006. Tr. 41. As noted, Plaintiff testified she did not work after that time because her husband "got a good job," she "didn't have to work," and she became a stay-at-home mom. Tr. 41-42.

The record indicates Plaintiff became ill in October 2009 and experienced significant, persistent symptoms that were not diagnosed until 2013. Tr. 364-69. *See, e.g.*, Tr. 339 (June 2010 note documenting symptoms of chest pressure; diarrhea and abdominal pain; generalized body flushing, burning, and feeling "icy hot" with reduced pain in a "slouched position"; worsened symptoms with certain foods); Tr. 337-38 (setting out symptoms

presented two weeks after Plaintiff's October 2009
hospitalization); Tr. 333-34 (documenting gastroenterology
consultation for recurrent facial swelling, abdominal pain, whole
body pain, diarrhea, hematochezia, heartburn, liver lesion,
enlarged mesenteric nodes); Tr. 330 (assessing chronic
rhinosinusitis versus possible headache disorder); Tr. 328
(evaluating a possible thyroiditis diagnosis); Tr. 316-17
(rheumatology consultation concluding Plaintiff presented with
"an interesting case" and would need to rule out Sjogren's
syndrome or the lgG IV related syndrome); Tr. 315
(gastroenterology follow-up in December 2011 noting there was not
any improvement in persistent symptoms); Tr. 311 (opining
Plaintiff's throat swelling was likely secondary to thyroiditis);
Tr. 397 (noting a questionable diagnosis of Hishimoto's disease);
Tr. 587-91 (November 2012 note expressing concern that Plaintiff
may have mast cell disorder); Tr. 376 (May 2013 gastroenterology
consultation summarizing Plaintiff's course of treatment and
numerous diagnostic studies since the 2009 onset of symptoms and
recommending a colonoscopy with biopsies of the colon to evaluate
mast cell disorder even if it appears normal); Tr. 381-84
(pathology results positive for increased mast cells in the
colon); Tr. 637 (assessing "very severe and frequent"
mastocytosis symptoms in May 2014).

　　　　On this record the ALJ's credibility finding based on

Plaintiff's work history is not supported by substantial evidence in the record.

In summary, the Court concludes the ALJ erred when he discredited Plaintiff's testimony based on her symptoms and medication side-effects, daily activities of living, and work history because the ALJ did not provide legally sufficient reasons for doing so and there is substantial evidence in the record to support Plaintiff's testimony.

## II. The ALJ erred when he discounted Dr. Williams's opinion.

Plaintiff contends the ALJ erred when he discounted the medical opinion of Dr. Williams, one of Plaintiff's treating physicians.

The Commissioner asserts Dr. Williams did not provide any credible assessment of Plaintiff's abilities, and, in any event, the ALJ reasonably rejected the "extreme limitations" found by Dr. Williams. The Commissioner, therefore, contends th ALJ's interpretation of the record is entitled to judicial deference.

### A. Standards

The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a reviewing physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). To reject an uncontradicted opinion of a treating physician, the ALJ must

provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). To reject a contradicted medical opinion of a treating physician, the ALJ must articulate "specific, legitimate reasons" that are based on substantial evidence in the record. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Sufficient reasons for rejecting an examining physician's opinion may include the physician's reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

**B.   Analysis**

On June 7, 2015, Dr. Williams completed a Medical Evaluation of Plaintiff. Tr. 651-55. Dr. Williams stated he had treated Plaintiff every one or two months since March 11, 2014. Dr. Williams diagnosed Plaintiff with mast cell activation syndrome and indicated it is "a life-long chronic debilitation condition with poor prognosis for improvement. Tr. 651. He described Plaintiff's symptoms as including "[f]lushing, dizziness, headache, throat swelling, fatigue, acute abdominal attacks of terrible burning pain/cramping, shaking/tremulousness, lightheadedness, memory impairment." Tr. 652. Dr. Williams noted Plaintiff needed to lie down or to rest for at least one

hour each day due to a combination of her condition and the side-effects of her medications.  Tr. 652.

Dr. Williams noted Plaintiff's functional impairment is "highly variable," but he indicated Plaintiff experiences "bad days more often than good."  Tr. 653.  Dr. Williams indicated Plaintiff cannot walk even a city block without rest or significant pain, is able to sit for only sixty minutes at one time and three hours total in an eight-hour day, and can walk for only five minutes at one time.  Tr. 653. Dr. Williams also noted Plaintiff is unable to work, and, therefore, whether she could perform a job that allowed her to change positions at will, whether she requires unscheduled breaks, and whether she needed to periodically elevate her legs in a physical eight-hour period were not issues.  Tr. 653-54.  He indicated Plaintiff should not lift or carry any amount of weight and would require breaks after handling/fingering tasks,  Tr. 654.  Dr. Williams also stated Plaintiff would miss more than four workdays per month due to her condition.  Tr. 655.

The ALJ gave "little weight" to Dr. Williams's opinion regarding Plaintiff's limitations and found Dr. Williams's opinion was not credible on the ground that it was "so extreme." Tr. 25-26.  The ALJ found the treatment records do not support Dr. Williams's assessment of Plaintiff's limitations.  Tr. 25. For example, in November 2014 Dr. Williams noted Plaintiff's

condition had improved and that her symptoms consisted primarily of flushing.  The ALJ, however, concluded flushing was not the cause of Plaintiff's limitations.  Tr. 26.  The ALJ also concluded even though Plaintiff's impairments impacted her quality of life, her symptoms are not a credible basis for a finding of disability or for the limitations noted in Dr. Williams's report.  Tr. 26.

The ALJ, however, gave "great weight" to the opinion of Neal Berner, M.D., a state-agency reviewing physician, who opined Plaintiff could perform medium-level work.  Tr. 25.  As noted, however, the opinion of a treating physician generally must be accorded greater weight than the opinion of an examining or reviewing physician.  *Ghanim*, 763 F.3d at 1160.  To reject a contradicted medical opinion of a treating physician, the ALJ must articulate "specific, legitimate reasons" that are based on substantial evidence in the record.  *Valentine*, 574 F.3d at 692.

On this record the Court concludes the ALJ erred when he failed to provide legally sufficient reasons based on substantial evidence in the record for rejecting the opinion of Dr. Williams, Plaintiff's treating physician.

## III. The ALJ erred by failing to consider the side-effects of Plaintiff's medications when he assessed Plaintiff's RFC.

Plaintiff contends the ALJ erred when he failed to consider the side-effects of Plaintiff's medications when he assessed Plaintiff's RFC.

The Commissioner asserts the only evidence of limitations was Plaintiff's own testimony, which the ALJ found was not credible. The Commissioner contends any error by the ALJ in failing to consider the side-effects of Plaintiff's medication was harmless because Plaintiff did not offer any objective evidence of functional limitations resulting from mental limitations, fatigue, or drowsiness caused by the frequent use of Benadryl or other medications.

## A. Standards

The side-effects of medication can affect an individual's ability to work, and, therefore, the ALJ must consider them when making a determination of disability. *Varney v. Sec'y of Health & Human Svcs.,* 846 F.2d 581, 585 (9th Cir. 1988)(*Varney I), modified on rehearing,* 859 F.2d 1396 (9th Cir. 1988)(*Varney II*). *See also Bunnell v. Sullivan,* 947 F.2d 341 (9th Cir. 1991). "Side effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized." *Varney I*, 846 F.2d at 585. *See also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Sullivan v. Zebley,* 493 U.S. 521, 535-36, 540 (1990).

## B. Analysis

The ALJ concluded Plaintiff could perform the full range of medium work without any specified limitations. Tr. 23. Although the ALJ found Plaintiff's medically determinable

impairments could reasonably be expected to cause some of her
alleged symptoms, he found the only evidence regarding
Plaintiff's limitations resulting from her medications was her
own symptom testimony, which the ALJ concluded was not credible.
Tr. 23. As a result, the ALJ did not include any limitations in
his assessment of Plaintiff's RFC based on her medications side-
effects.

As noted, the Commissioner argues any error by the ALJ
was harmless because Plaintiff did not offer any objective
evidence of the side-effects of her medication. The Commissioner
relies on *Thomas v. Barnhart*, 278 F.3d 948 (9th Cir. 2002), to
support her position. In *Thomas* the court concluded the ALJ did
not err when he failed to consider the plaintiff's testimony
regarding the side-effects of her medication because there was
not any objective medical evidence to support her testimony.

Here Plaintiff indicated in her Function Report that
she experienced sleepiness and drowsiness from taking her
medications, which included Benadryl and allergy medications.
Tr. 211. At the hearing she testified she takes Prednisone and
Benadryl when she experiences an "attack," takes Benadryl
sometimes two to three times a day, and experiences "a lot of
tiredness" from taking the medications. Tr. 41. Dr. Williams
also stated in his opinion that Plaintiff needs to lie down or to
rest for at least one hour each day in part due to the side

effects of Benadryl and Ketotifen, which cause sedation.
Tr. 652-53. The Court has already found the ALJ erred when he
did not provide specific, clear, and convincing reasons for
discounting Plaintiff's testimony as to the limitations caused
by the side-effects of her medications and for discounting
Dr. Williams's treatment notes that Plaintiff must rest
periodically due to the side-effects of those medications.
Tr. 652-53.

Accordingly, the Court concludes on this record that
the ALJ erred when he failed to provide legally sufficient
reasons supported by substantial evidence in the record for
failing to consider Plaintiff's limitations caused by the side-
effects of her medications in his assessment of Plaintiff's RFC.

## IV. The ALJ erred when he failed to provide germane reasons for rejecting lay-witness testimony.

Plaintiff contends the ALJ erred when he failed to provide
germane reasons for discounting the lay-witness statements of
Sharon Cook, Plaintiff's mother, regarding Plaintiff's
limitations.

The Commissioner, however, contends the ALJ properly
considered Cook's statements, and, in any event, any error by the
ALJ in failing to give germane reasons for rejecting her
statements was harmless.

### A. Standards

Lay-witness testimony regarding a claimant's symptoms

is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006). Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an "individualized, witness-by-witness-basis. If the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012)(quotation omitted).

Germane reasons for discrediting a witness's testimony include inconsistency with the medical evidence and the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

**B. Analysis**

Cook stated in her Third-Party Function Report that Plaintiff cared for her family, cooked, cleaned, did laundry, and helped her children with their homework, "but only if she is not feeling bad." Tr. 214. Cook also stated Plaintiff was "trying to be a good wife and mother [but it] isn't easy when [Plaintiff]

is sick most of the time."  Tr. 220.

        The ALJ found Cook's statements were credible, but he
concluded they were not grounds for finding Plaintiff disabled.
The ALJ concluded: "[W]hile it is likely true that caring for 4
children and maintaining a household is challenging with
[Plaintiff's] symptoms, it is not a basis for disability."
Tr. 26.  The ALJ, however, did not give any specific reasons
germane to cook for rejecting her statements.

        On this record the Court concludes the ALJ erred when
he failed to give "germane" reasons for rejecting Cook's
testimony.


## REMAND

    The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000).  The
issue turns on the utility of further proceedings.  A remand for
an award of benefits is appropriate when no useful purpose would
be served by further administrative proceedings or when the
record has been fully developed and the evidence is insufficient
to support the Commissioner's decision.  *Strauss v. Comm'r,* 635
F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,*
379 F.3d 587, 593 (9th Cir. 2004)).  The court may not award
benefits punitively and must conduct a "credit-as-true" analysis

to determine whether a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are not any outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if such evidence were credited.

*Id.* The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010). When the court finds the elements of the "credit-as-true" rule have been satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. When "the Commissioner fails to provide adequate reasons for rejecting the treating physician's opinion, we credit that opinion as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). *See also Reddick v. Chater*, 157 F.3d 715, 729 (9th Cir. 1998)("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989)(if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

Here the Court concludes the ALJ erred when he failed to

provide legally sufficient reasons supported by substantial evidence in the record for rejecting Dr. Williams's opinion, the testimony of Plaintiff, and the lay-witness testimony of Sharon Cook.  It is clear from the record that the ALJ would be required to find the claimant disabled when this evidence is credited.  In addition, there are not any outstanding issues that must be resolved before a determination of disability can be made.  Thus, the Court concludes "it is clear from the administrative record that [Plaintiff] is entitled to benefits," and, therefore, no useful purpose would be served by further administrative proceedings.  *See Reddick*, 157 F.3d at 729.

Accordingly, the Court remands this matter for the immediate calculation and award of benefits.


## <u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this 28th day of February, 2018.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge